UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RYAN FELTZ,

              Petitioner,

  v.                                               9:19-CV-0854
                                                       (BKS/DJS)

MARY VANN, Superintendent,

              Respondents.

---

APPEARANCES:                                      OF COUNSEL:

RYAN FELTZ
18-A-2886
Petitioner, pro se
Altona Correctional Facility
555 Devils Den Road
Altona, NY 12910

BRENDA K. SANNES
United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

Presently before the Court are several documents which were requested to be read in conjunction with pro se petitioner Ryan Feltz's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as well as an application to proceed in forma pauperis ("IFP"), a motion to appoint counsel, and what appears to be an amended petition. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Exhibits ("Ex."); Dkt. No. 4, IFP Application; Dkt. No. 5, Motion for Appointment of Counsel; Dkt. Nos. 6-7, Addendums; Dkt. No. 8, Amended Petition ("Am. Pet.").

On July 17, 2019, the Court received the original petition, Dkt. Entry for Pet., which was signed by petitioner on July 9, 2019, Pet. at 44.[1] On the same day, the Court also received petitioner's statutory filing fee. Dkt. Entry for Pet. (indicating receipt information for payment of filing fee).

On July 26, 2019, the Clerk received the IFP Application, Motion for Appointment of Counsel, and addendums; however, due to a clerical error they were not filed until August 5, 2019. *See* Dkt. Entries for Dkt. Nos. 4-7. On July 30, 2019, without knowledge of the additional motions and supplemental documents, the Court issued a Decision and Order dismissing the petition without prejudice for failure to exhaust available state court remedies. Dkt. No. 2, Decision and Order dated 07/30/19; Dkt. No. 3, Judgment. On July 31, 2019, the day after the Judgment was filed, the Clerk received what appears to be an Amended Petition. Dkt. No. 8, Amended Petition ("Am. Pet.").

Upon due consideration and in light of petitioner's pro se status, the Judgment entered July 30, 2019 is vacated and the Clerk is directed to restore this case to the active docket.

## II. RELEVANT BACKGROUND

### A. Prior Petitions

Petitioner has previously filed two related habeas petitions with this Court. *See Feltz v. Attorney General for the State of New York*, 9:18-CV-0179 (GTS) ("*Feltz I*"); *Feltz v. Vann, et. al.*, No. 9:19-CV-0387 (BKS/ATB) ("*Feltz II*"). Neither action was decided on the merits. *See Feltz I*, Dkt. No. 37, Motion to Withdraw; *Id.*, Dkt. No. 39, Decision and Order dated

---

[1] Throughout the original petition, petitioner also requests the Court to appoint counsel to assist him. Pet. at 4, 16-17, 23, 36, 39, 42.

12/17/18; *Feltz II*, Dkt. No. 4, Decision and Order dated 04/08/19 ("the April Order")[2]; *Id.*, Dkt. No. 5, Judgment.

As is related to the present petition, *Feltz II* challenged a 2018 judgment, upon a guilty plea, in Greene County for criminal possession of a firearm and a violation of probation for petitioner's 2014 conviction for third degree criminal possession of a weapon in Dutchess County. April Order at 2. Petitioner alleged that a direct appeal was commenced but, due to the noncompliance of the County Clerk in providing the relevant court documents to his attorney, the appeal process had stalled. *Id.* at 2-3. Further, petitioner stated he had a motion, pursuant to New York Criminal Procedure Law § 440 ("440 motion"), currently pending in state court. *Id.* at 3. Petitioner argued he was entitled to relief because (1) the court lacked jurisdiction over him due to a defective accusatory instrument; (2) his trial counsel was ineffective; (3) his due process rights were violated; and (4) his plea was involuntary. *Id.* at 4.

The petition was ultimately dismissed without prejudice and with a right to renew once petitioner had successfully exhausted his state court remedies. *Feltz II*, April Order at 9. Specifically, the Court held that despite petitioner's arguments that the exhaustion requirement should be waived – as the Court Clerk's refusal to provide his counsel with necessary paperwork precluded exhaustion, along with the fact that his appeal and 440 motion would not be decided before his sentence of incarceration expired – state corrective process was still available to petitioner as he was actively engaging in that process. *Id.* at 5-6. Petitioner partially completed both the processes of perfecting his direct appeal and

---

[2] The April Order is also an unpublished decision. *See Feltz v. Vann*, No. 9:19-CV-0387 (BKS/ATB), 2019 WL 1516935 (N.D.N.Y. Apr. 8, 2019).

litigating his 440 motion; accordingly, it cannot be said that no remedy exists for petitioner to pursue. *Id.* Further, petitioner's submissions also failed to justify a finding of futility in engaging in the appeals process. *Id.* at 7. Federal courts are prepared to except petitioners from the exhaustion prerequisite "[w]hen it is perfectly apparent . . . that a prisoner's requests to the state court and . . . state-appointed counsel have been to no avail[.]" *Id.* at 7 (quoting *Simmons v. Reynolds*, 898 F.3d 865, 867-68 (2d Cir. 1990)). However, because there was no proof that petitioner, or his counsel, were attempting to comply with the appeal deadline or alerting the appellate court to any difficulties they were having in obtaining the court ordered documents from the County Clerk, futility was not apparent. *Id.* at 7-8. Therefore, the petition was dismissed.

### B.     Present Petition

In his present, original petition, petitioner again challenges the same 2018 conviction, pursuant to a guilty plea, in Greene County for criminal possession of a firearm and a violation of probation from petitioner's 2014 conviction for third degree criminal possession of weapon. Pet. at 2; Ex. at 59, 60; Dkt. No. 7 at 1. Petitioner entered the plea, with a joint sentence recommendation of one-and-a-half to three years incarceration on the gun charge, and one to three years on the probation violation, to run concurrently with one another. Ex. at 59; Dkt. No. 7 at 1. Petitioner anticipates that his period of incarceration will terminate on or about September 23, 2019, whereupon he will then be paroled until July of 2021. Pet. at 13.

Petitioner commenced his direct appeal; however, he argues that "[i]t is self-evident that an appeal will not be perfected and decided before petitioner's release on September

4

23, 2019." Pet. at 14. Petitioner included several documents which reveal the course of said appeal; however, the ultimate conclusion is that "[a]ssigned [c]ounsel has not perfected [the] appeal yet." Dkt. No. 7 at 1.

On October 30, 2018, the Appellate Division, Third Department granted petitioner's application for poor person status and appointed counsel for petitioner's direct appeal. Ex. at 8; *see also* Pet. at 14. The Third Department acknowledged the filing of the notice of appeal and informed counsel that he had sixty days to perfect the appeal or move for an extension. Ex. at 8, 15. On February 14, 2019, the Third Department wrote petitioner a letter explaining that on February 5, 2018, the court granted petitioner's counsel's request for an extension to perfect the appeal until April 29, 2019. *Id.* at 14. The letter also directed counsel to share any issues he had obtaining transcripts or other relevant underlying court documents with the Third Department. *Id.* After counsel received those documents, copies would be provided to petitioner "to assist with [his] pro se supplemental brief, if [he] wish[ed] to file the same . . . ." *Id.*

On April 8, 2019, petitioner wrote a letter to the Third Department requesting new counsel. Ex. at 18-19. Petitioner shared that he had not heard from his counsel in a month, although, in March, petitioner had received a copy of the plea hearing transcript his counsel was intending to use as the basis of petitioner's appeal. *Id.; see also* Pet. at 14. Additionally, petitioner was concerned because, based on his personal research, his court-appointed counsel had not won many criminal appeals; therefore, petitioner requested appointment of new counsel who had a better success record. Ex. at 18-19. Two weeks later, petitioner sent an additional letter to his counsel and the Third Department asking about the status of his appeal and expressing his displeasure at the fact that the appeal would not be completed

5

prior to the end of his period of incarceration. *Id.* at 21.

On April 26, 2019, petitioner's counsel wrote to the Third Department asking that new counsel be assigned to petitioner's appeal, without providing any reasoning for said request, and seeking a second extension of time to perfect the appeal. Ex. at 13. On April 30, 2019, counsel wrote petitioner a letter, explaining that he had asked the court to be relieved as counsel in petitioner's appeal. *Id.* at 11. Counsel went on to explain that the appeals process is lengthy and must be based on a record of the proceeding below. *Id.* Consequently, when a petitioner

> pleads guilty, and there are no issues appearing in the record to indicate that the plea was not voluntary and knowing, there isn't a lot to argue. Most cases result in a guilty plea, with the majority of pleas requiring a waiver of appellate rights, yet these also end up at the Appellate Division with little success. Very few appeals over all result in a reversal, and virtually none are from pleas.

*Id.* The court assigned petitioner new counsel on June 21, 2019. Pet. at 14. Petitioner's addendum confirms that "[n]othing has proceeded to the State's Highest Court as of yet." Dkt. No. 7 at 2.

On January 13, 2019, petitioner also collaterally attacked his conviction via a 440 motion. Pet. at 25; Dkt. No. 7 at 1. On May 8, 2019, the Greene County Court denied the motion. Pet. at 24-25; Dkt. No. 7 at 1. On or about June 8, 2019, petitioner applied for leave to appeal and has yet to hear about the result of his application. Pet. at 25; Dkt. No. 7 at 1.

Petitioner also shared that he "was denied habeas relief from the State when his petition was dismissed on September 27, 2018. He filed another [petition] and was [again] denied on March 6 and 14, 2019." Pet. at 23-24; *see also* Dkt. No. 7 at 2. Petitioner also adds in his addendum that on "June 6, 2019 a State habeas was filed per CPLR 7010(b) to

challenge the denial of bail pending appeal; No response from the Third Dept. has been had[.]" Dkt. No. 7 at 2.

Petitioner contends he is entitled to habeas relief because (1) his counsel was ineffective (Pet. at 2-6); (2) his conviction was not supported by legally sufficient evidence (*id.* at 4, 6-10); (3) the court and prosecutor both engaged in misconduct depriving petitioner of equal protection (*id.* at 8-10); and (4) his plea was invalid (*id.* at 11-13). For a more complete statement of petitioner's claims, reference is made to the petition and attachments.

### C.    **Amended Petition**

It is unclear whether petitioner intended to file a supplement to his original petition or was instead attempting to file an amended petition. *See* Dkt. No. 8-2 (entitling the document as a habeas petition and requesting "that it be considered and read in conjunction with [the] petition dated July 9, 2019."). Regardless of whether this document is a supplement to the original petition, or whether it is construed as an amended petition, it still suffers from the same deficiencies as the original petition.

Petitioner's amended petition repackages the information from his original petition into a much more concise and readable format. However, the amended petition still suffers from the same procedural deficiencies identified in the original petition.

With respect to exhaustion of his state court remedies, petitioner indicates that a "[t]imely appeal was taken," but that it was not perfected. Am. Pet. at 1, 28. Petitioner explains that "[h]e is guilty of not perfecting his appeal, however a mitigating circumstance was his newborn children[.]" *Id.* at 42. Moreover, petitioner confirmed that the 440 motion he filed on December 6, 2018 has still "failed to produce a decision [for the last] nearly 8

7

months." *Id.* at 3; *see also id.* at 27. In conclusion, petitioner again admits that he has "not had an opportunity to appeal to the State's Highest Court." *Id.* at 4.

While difficult to decipher, it appears petitioner contends that he is entitled to habeas relief because (1) his Equal Protection Rights were violated when the prosecutor refused to instruct the grand jury on Penal Law § 400.00(17) and prosecutorial and judicial misconduct occurred when the provisions of said statute were ignored at the time of petitioner's plea and during the course of petitioner's 440 motion (Am. Pet. at 14-19, 28); (2) petitioner's plea bargain was defective (*id.* at 20-21, 27-28); (3) petitioner is factually innocent (*id.* at 22-24, 38); (4) his counsel was ineffective (*id.* at 22, 27-28, 32-33); and (5) the state courts do not have jurisdiction over petitioner (*id.* at 35-37, 39).

## III.  DISCUSSION

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To properly exhaust his claims, petitioner must do so both procedurally and substantively. Procedural exhaustion requires that the petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Substantive exhaustion requires that the petitioner "fairly present"

each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).

In this case, petitioner acknowledges that "federal habeas relief is barred if State remedies are not exhausted." Ex. at 21. However, petitioner's petition, amended petition, and related filings reveal that he has not yet completed the process of undertaking a direct appeal, despite having successfully commenced said process. *Id.* at 8, 14, 13; Pet. at 14; Am. Pet. at 1, 4. Further, petitioner has referenced a §440 motion which he recently appealed; however, no subsequent decision has yet been rendered. Pet. at 24-25; Dkt. No. 7 at 1. Accordingly, nothing in the current filings suggests a state court has decided his claims, much less the highest state court capable of reviewing them. Therefore, his claims are unexhausted.

Petitioner argues that the exhaustion requirement should be waived because of the inordinate amount of time his direct appeal is taking.[3] Specifically, petitioner states:

---

[3] Petitioner also re-asserts the same arguments regarding the Court Clerk's actions precluding exhaustion from occurring. Am. Pet. at 5 ("The Clerk still has not provided the necessary papers; only a transcript of the Plea of April 24, 2018.") For the reasons previously outlined in *Feltz II*, petitioner's arguments again fail. April Order at 5-7. Moreover, given the additional documentation provided, it is clear that petitioner was provided with the appropriate, relevant records from the Clerk because, as petitioner's counsel advised him, the only state court records that were relevant on his appeal, given his guilty plea and waiver of appeal, were the plea minutes contained in the transcript provided to both petitioner and his counsel. Ex. at 11-12. Accordingly, not only is exhaustion not

9

> It has become painfully apparent that [he] will serve [his] entire sentence before [his] appeal is determined. CPL 440 relief is barred if appeal is possible. State habeas is barred if 440 or appeal relief is available; federal habeas relief is barred if State remedies are not exhausted. The delay in processing [his] appeal is barring [him] from alternative relief.

Ex. at 21; *see also* Dkt. No. 7 at 3 (arguing the state appellate process is inadequate because it "is incapable of preventing one subject[ed] to an illegal sentence, from serving the entire sentence if it is less than 1 ½ years . . . There is clearly no possible way the appeal would be disposed before Summer 2020."); Am. Pet. at 5 ("The fact is, in New York, there is no process available that can decide an appeal in less than a year from judgment."). Petitioner concludes that, given the short length of his sentence, the consequences of the appeal delay are engineered to encourage him not to bring his case at all. Pet. at 17-18.

The Supreme Court has reaffirmed Congress's intention to require "that a state prisoner challenging his conviction must first seek relief in a state forum, if a state remedy is available." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). The Supreme Court also noted that "[i]t is true that exhaustion of state remedies takes time, but there is no reason to assume that [the] . . . state courts will not act expeditiously." *Id.* at 494-95. However, and to petitioner's point, the Supreme Court contemplated, in dicta, that "if [a] prisoner could make out a showing that, because of the time factor, his otherwise adequate state remedy would be inadequate, a federal court **might** entertain his habeas corpus action immediately[.]" *Id.* at 497 (emphasis added).

"[T]he courts of the Second Circuit have waived exhaustion where . . . a prisoner's appeal has languished in the state court for an excessive period of time and the prisoner's

---

futile, petitioner's contentions of interference and delay are meritless.

efforts to have his appeal heard have been to no avail." *Cameron v. LeFevre*, 887 F. Supp. 425, 428 (E.D.N.Y. 1995) (citing *inter alia Simmons v. Reynolds*, 898 F.2d 865, 867 (2d Cir. 1990) (holding that a six and a half year delay in rendering a decision on petitioner's direct appeal constituted an excessive delay so as to relieve petitioner from the exhaustion requirement)). While there is no bright-line rule, the Second Circuit noted that "[t]he doctrine of exhaustion of state remedies does not require a prisoner to wait six years . . . or even three or four years before enlisting federal aid to expedite an appeal." *Simmons*, 898 F.2d at 870; *but see Ralls v. Manson*, 503 F.2d 491, 493 (2d Cir. 1974) (holding that while a three and a half year delay in obtaining direct review of a murder conviction was "deplor[able] . . . on the totality of the facts . . . there [wa]s neither an absence of available State corrective process nor the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.") (quotation marks omitted).

Here, petitioner again fails to set forth facts sufficient to excuse the exhaustion requirement and trigger federal intervention. To the extent that petitioner can be said to have experienced any delay, it cannot be said that the delay is inordinate or that the State of New York is solely responsible. The Third Department first assigned petitioner counsel on October 30, 2018. Pet. at 14; Ex. at 8. Accordingly, petitioner's direct appeal has only been in the process of being perfected and decided for nine months. This is clearly distinguishable from the scenarios contemplated by the Second Circuit in the aforementioned cases, where the exhaustion requirement was dismissed only after petitioners had waited for several years for their appeals to be resolved. Further, the courts cannot be held responsible for the entire nine months which have elapsed. It was petitioner himself who first requested he be assigned new counsel on April 8, 2019. Ex. at 18-19. Accordingly, the two and a half month

11

time period between the beginning of April and the end of June, when new counsel was assigned, is a delay that is attributable to the petitioner alone. *See Torres v. Scully*, No. 87-CV-1773, 1987 WL 19413, at *2 (E.D.N.Y. Oct. 23, 1987) (finding that where petitioner requested extensions to timely file a pro se supplemental brief and made a motion to obtain new counsel, petitioner, and not the State, was responsible for the resulting year and a half delay).

Moreover, the fact that petitioner's prison sentence is nearing its conclusion and he may be paroled before the conclusion of his state appellate proceedings is also insufficient to justify excusing the exhaustion requirement. Petitioner's challenge to the validity of his conviction will not be rendered moot by his release from prison because petitioner's post-conviction supervision continues to impose collateral consequences upon him. *See Islam v. New York State Bd. of Parole*, No. 9:13-CV-0854 (GTS/TWD), 2016 WL 3943668, at *2 (N.D.N.Y. June 2, 2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Sibron v. New York*, 392 U.S. 40, 54-55 (1968)). Therefore, the Court will maintain jurisdiction over petitioner, as he will still be in custody while on supervision, and he will still be entitled to relief from said supervision conditions assuming, after exhaustion is complete and his petition is re-filed, that the Court finds the petition meritorious.

Based on the foregoing, both the petition and amended petition are dismissed without prejudice to re-filing once petitioner has pursued and exhausted all the claims he wants to raise in the state courts. *See Diguglielmo v. Senkowski*, 42 F. App'x. 492, 496 (2d Cir. 2002) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so. Accordingly, we dismiss DiGuglielmo's petition without prejudice. This will allow petitioner to

pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted).[4]

## IV. CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Judgment entered is **VACATED** and the Clerk of the Court is directed to re-open this matter and restore it to the Court's active docket; and it is

**ORDERED** that petitioner's IFP Application, Dkt. No. 4, is **DENIED AS MOOT** because he has already remitted the statutory filing fee, Dkt. Entry for Pet.; and it is

**ORDERED** that both the petition, Dkt. No. 1, and amended petition, Dkt. No. 8, suffer from the same deficiencies. Accordingly, both are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies; and it is

**ORDERED** that petitioner's requests to appoint counsel (Pet. at 4, 16-17, 23, 36, 39, 42; Dkt. No. 5) are similarly **DISMISSED WITHOUT PREJUDICE** and with a right to renew pending re-filing of the habeas petition; and it is

**ORDERED** that no certificate of appealability ("COA") shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right"

---

[4] The Court notes that if petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. *Burton v. Stewart*, 549 U.S. 147, 155 (2007) (per curiam) (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)).
  Under the AEDPA, habeas petitions challenging a state-court judgment of conviction are subject to a one-year statute of limitations. The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A). Any subsequent habeas petition must be timely filed.

13

pursuant to 28 U.S.C. § 2253(c)(2).[5] Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is

**ORDERED** that the Clerk serve a copy of this Decision and Order on petitioner in accordance with the Local Rules.

Dated: August 6, 2019

Brenda K. Sannes
U.S. District Judge

---

[5] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'").